# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL RINALDI, | : | CIVIL NO. 1:CV-09-1700 |
| Plaintiff | : | (Judge Rambo) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | |

# **M E M O R A N D U M**

Plaintiff Michael Rinaldi ("Rinaldi"), a federal inmate currently incarcerated at the United States Penitentiary in Atwater, California, commenced this action on September 2, 2009, by filing a complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 & 2671 *et seq*. (Doc. 1.) In his complaint, Rinaldi alleges that on September 5, 2008, he was assaulted by his cellmate in the Special Housing Unit ("SHU") of the Federal Correctional Institution at Schuylkill in Minersville, Pennsylvania ("FCI-Schuylkill"), his former place of confinement. As a result of the assault, Rinaldi claims he suffered a lost tooth and received stitches to his lip and chin. He contends that Bureau of Prisons' ("BOP") staff were aware that his cellmate was violent, had a history of assaulting his cellmates, was mentally unstable, and was placed in the SHU after involvement in a physical altercation. Therefore, Rinaldi asserts, BOP staff should have known that his cellmate posed a

threat to his safety.

Before the court is a motion to dismiss the complaint or, in the alternative, for summary judgment, filed on behalf of Defendant United States of America. (Doc. 13.) The court will analyze the motion under the summary judgment standard, and, for the reasons set forth below, the motion will be denied.

I. **Background**

The following facts are related to Rinaldi's claims. The court notes any factual disputes between the parties by presenting both parties' contentions.

A. **Factual Background**

On March 12, 2001, Rinaldi was committed to the custody of the BOP and designated to FCI-Schuylkill. (Doc. 18 ¶ 10.) On August 17, 2008, he was transferred to the SHU and placed on administrative detention status pending an investigation for violating BOP rules. (*Id*. ¶ 11.) He was placed in the SHU's cell 180 AD. (*Id*. ¶ 12.) On August 18, 2008, at approximately 4:23 p.m., he was moved from cell 180 AD to cell 205 DS. (*Id*. ¶ 13.) Rinaldi was moved again at approximately 7:52 p.m., from cell 205 DS to cell 194 AD. (*Id*. ¶ 14.)

On September 4, 2008, at approximately 5:56 p.m., inmate Haile Salaam was placed in cell 194 AD with Rinaldi. (*Id*. ¶ 15.) Between 5:56 p.m. on

September 4, 2008 and 10:03 a.m. on September 5, 2008, SHU staff conducted rounds on thirty (30) separate occasions. (*Id*. ¶ 16.) In that time, Rinaldi did not report to SHU staff that inmate Salaam posed any type of threat to him. (*Id*. ¶ 17.)

On the morning of September 5, 2008, Rinaldi and inmate Salaam were escorted from cell 194 AD to the SHU recreation area and placed in the same recreation pen. (*Id*. ¶ 18.) At approximately 10:03 a.m., inmate Salaam ran from the back of the recreation pen and jumped and kicked Rinaldi in the middle of the back, causing Rinaldi to strike his face on the recreation pen. (*Id*. ¶ 19.) Inmate Salaam continued to strike Rinaldi with a closed fist in the face and upper torso. (*Id*. ¶ 20.) Upon observing this altercation, SHU staff activated their body alarm and ordered the inmates to separate. (*Id*. ¶ 21.) Inmate Salaam ignored the orders and continued to strike Rinaldi. (*Id*. ¶ 22.) After additional staff arrived, SHU staff separated the inmates and submitted them to hand restraints. (*Id*. ¶ 23.)

After the assault, Rinaldi was promptly escorted to Health Services for medical treatment. (*Id*. ¶ 24.) He informed Health Services staff that he had been hit in the face by another inmate and had lost a tooth while in the SHU recreation pen. (*Id*. ¶¶ 25-26.) Staff evaluation revealed multiple open wounds and a fractured tooth. (*Id*. ¶ 27.) Stitches were applied to a laceration on Rinaldi's lip and he was told they would be removed in five to seven days. (*Id*. ¶ 28.) Further,

3

staff informed Rinaldi that the fractured tooth could not be restored. (*Id*. ¶ 29.)

When Rinaldi was interviewed after the assault, he stated, "I don't exactly know what happened. He just hauled off and started assaulting me for no reason. I didn't do anything to him." (*Id*. ¶¶ 30-31.) Further, in his counterstatement of material facts, Rinaldi asserts that immediately after the incident he did not know why he was assaulted. (Doc. 23 ¶ 4.) However, he claims that when he spoke with SHU officers and other inmates after the assault, they informed him that it was "common knowledge" that inmate Salaam had been displaying violent and erratic behavior as well as signs of mental illness. (*Id*. ¶ 5.) Further, Rinaldi discovered that Salaam had assaulted his previous two cellmates and had been placed in the SHU because of at least one of these assaults. (*Id*. ¶¶ 6-7.) Inmate Salaam also informed SHU officials when he entered the SHU that he did not want to be housed with another inmate. (*Id*. ¶¶ 9, 11.)

### B. <u>Central Inmate Monitoring</u>

In an effort to protect inmates from the dangers associated with being incarcerated, the BOP has implemented procedures to separate inmates from other inmates known to be threats to their safety. (Doc. 18 ¶ 32.) As part of these procedures, the BOP monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for

4

management. (Id. ¶ 33.) These inmates, known as central inmate monitoring ("CIM") cases, require a higher level of review which may include Central Office and/or Regional Office clearance for transfers, temporary releases, or community activities. (*Id.* ¶ 34.)

Further, in order to better manage CIM cases, such cases are classified according to different assignments. (*Id.* ¶ 36.) One such assignment is known as "separation." (*Id.* ¶ 37.) Separation applies to inmates who may not be confined in the same institution with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future. (*Id.* ¶ 38.) An exception to this rule is if an institution has the ability to prevent any physical contact between the separatees. (*Id.*) Factors to consider in classifying an inmate to this separation assignment include, but are not limited to, testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution. (*Id.* ¶ 39.) A separation assignment also includes inmates who have provided authorities with information regarding the unauthorized or illegal activities of others. (*Id.* ¶ 40.)

### C.  **Procedural Background**

On October 6, 2008, the BOP's Northeast Regional Office received from

Rinaldi administrative tort claim number TRT-NER-2009-00283, setting forth the same allegations contained in the instant complaint. (Doc. 1 at 4.) In that claim, Rinaldi sought compensatory damages in the amount of $1,000,000, for allegedly failing to protect him from the September 5, 2008 assault. On April 3, 2009, the Northeast Regional Office denied tort claim TRT-NER-2009-00283. In its response, the Regional Office explained the denial as follows:

> Investigation reveals that on September 4, 2008, you were given a new cellmate while housed in the Special Housing Unit. During recreation the next day, you were assaulted by this inmate. Prior to the assault, you did not advise staff of any concerns you had about this inmate. Furthermore, there was no indication this inmate posed a specific threat to you. There is no evidence to suggest you experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons' employee.

(*Id.*)

Rinaldi timely filed his complaint on September 2, 2009.[1] (Doc. 1.) Defendant filed the instant motion to dismiss or, in the alternative, for summary judgment, on December 18, 2009. (Doc. 13.) Responsive and reply filings followed, and the motion is now ripe for disposition.

---

[1] In their brief in support of the instant motion, Defendant concedes that Rinaldi has exhausted his administrative remedies with respect to his claim. (*See* Doc. 17 at 2-3.)

## II. Standards of Review

### A. Motion to Dismiss

Defendant has filed a motion which, in part, also seeks dismissal of the complaint on the grounds that Rinaldi's complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Rinaldi's claims. Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). The court will not exclude the evidentiary materials accompanying Defendant's motion to dismiss because Rinaldi has also been given a reasonable opportunity to present material relevant to the motion. Thus, Defendant's motion to dismiss under Rule 12(b)(6) and for summary judgment, shall be treated as seeking summary judgment rather than dismissal under Rule 12(b)(6).

### B. Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and

7

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### III.    Discussion

"The FTCA 'was designed to primarily remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962)). Federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the

place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee. *United States v. Muniz*, 374 U.S. 150 (1963).

A federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); *Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978); *O'Neal v. Dep't of Army*, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987). Thus, in Pennsylvania, "[t]o establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. *See* 18 U.S.C. § 4042; *Turner*, 679 F. Supp. at 443.

Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the

evidence. *Baum v. United States*, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

In the instant case, while Defendant concedes that it owed a duty to Rinaldi from known dangers, it contends that summary judgment should be granted in its favor because Rinaldi has failed to establish a breach of that duty or causation. Specifically, Defendant claims that there exists nothing in the record to suggest that prior to September 5, 2008, prison officials could have known that inmate Salaam posed any type of threat to Rinaldi's safety. Further, prior to September 5, 2008, Rinaldi could not have been provided a CIM assignment of "separation" with respect to inmate Salaam since there was no sign that inmate Salaam posed any type of threat to Rinaldi. In support of these contentions, Defendant asserts that a review of inmate Salaam's disciplinary records fails to reveal any evidence that he posed a specific threat to Rinaldi. (Doc. 17 at 15.) However, in the court's view, a supplemental document filed under seal by Defendants in support of summary judgment belies this assertion. (*See* Doc. 37.) Moreover, in his counterstatement of material facts, Rinaldi asserts that SHU officers knew prior to the September 5, 2008 assault that inmate Salaam was exhibiting violent and

11

erratic behavior, and that he had recently assaulted two of his previous cellmates. (Doc. 23 ¶¶ 5-7.) Rinaldi also asserts that he discovered inmate Salaam had previously informed SHU officers that he did not want to be housed with any other inmates in the SHU. (Id. ¶ 9.) These conflicting accounts of what SHU officers knew with respect to inmate Salaam's assaultive behavior and risk of harm to Rinaldi create a genuine issue of material fact as to whether prison officials had pre-attack knowledge that inmate Salaam posed a specific threat to Rinaldi's safety.[2] Thus, Defendant's motion for summary judgment will be denied.

An appropriate order will issue.

                                                            s/Sylvia H. Rambo
                                                            United States District Judge

Dated: July 1, 2010.

---

[2] Although the "discretionary function exception" may relieve Defendant of liability in this matter, Defendant does not raise this exception in its brief and the court declines to consider the issue *sua sponte*. *See, e.g.*, *Michtavi v. United States*, Civ. No. 4:07-CV-00628, 2009 WL 578535, at *10 (M.D. Pa. Mar. 4, 2009) ("Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception.") (collecting cases).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL RINALDI, | : | CIVIL NO. 1:CV-09-1700 |
| Plaintiff | : | (Judge Rambo) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | |

## O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The motion for summary judgment (Doc. 13) is **DENIED**.

2) Defendant is directed to file an answer to the complaint (Doc. 1) within thirty (30) days of the date of this order.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: July 1, 2010.